Thank you very much, your honor, for taking my case early. Suzanne Luban for the petitioner Alan Barries. In light of Andrade, I will be addressing the two issues, the second and third issues raised in my brief, and I'd like to have two minutes for rebuttal. If you keep track of your own rebuttal, I'll try to do it as well.  This Court must undertake an independent review of the record because there is no state court decision to determine whether the state court applied federal precedent correctly under 2254 D1. And the record amply shows in this case that there was not only a reasonable doubt about the competence of my client, but in fact this was a highly suspect plea, both as to his competence and as to whether it was an intelligent plea. The defendant told the judge that he was under the influence of psychotropic drugs, and the judge, rather than undertaking an inquiry that would have informed the judge whether the drugs were affecting him, simply asked a conclusory yes-no question. He said, I'm not asking if you are under the influence of drugs or if you're taking any drugs, but only if you're under the influence to such a degree that you don't know what is going on. I submit that. Can I just ask you a question? Yes. You said there was no state court decision. What about the court of appeal decision? There's a court of appeal decision that's the direct appeal, so that decision does not take into account any of the evidence that was submitted on habeas. So, in fact, the court of appeal says there's no indication what drugs he was taking or what effects they had on him, which information is available in the psychiatric records from the jail that the petitioner submitted in his habeas petitions, which were denied in summary postcard denials by both the court of appeal and the Supreme Court. So this is a case like Himes, the new case that came out, I guess, on Thursday, where there's no state court decision to give deference to. So what is it that you said was in the habeas record that was not in the record on direct appeal? They're in my excerpts of record, the jail psychiatric records and the reports of the two doctors who examined him, and there are also records showing from 1992 his history of the traumatic attack that basically scarred my client for life and left him with hallucinations and delusions and other symptoms of his post-traumatic stress disorder. And psychosis, which for this guy were controlled by drugs when he was under the care of a physician at Kaiser under a certain drug regimen for a period of time. His delusions and other symptoms were under control and he was able to function. But when those drugs were either removed or changed, he had fluctuating basically competence such that when he was examined a year prior to his plea in this case, two doctors found him incompetent. The judge was having him examined probably every couple of months to see if he came back to competence. And finally, when he was under the care of a physician at Kaiser and had been taking meds for some time, he did regain his competence. What effect is this report of the second appointed attorney? Is it of any value, the second appointed attorney? The second attorney who said he read the plea and he read the probation report, he basically did nothing. And I would submit that actually all three of his lawyers were incompetent in this case. The first one for not pursuing when the client said to him, they're changing my medications and I'm confused about it and it's the wrong medication, I don't feel right. And rather than pursuing that, he essentially undertook what was a very arduous plea in this case. But if you'll note, the defendant never says anything other than yes or no. So his monosyllabic responses, same as in the Godinez case, do not overcome the problem or the doubt that is created by his revealing that he's on these psychotropic drugs. So in the normal situation, without being delusional and without having a history of being incompetent, the judge can rely on his observations and the yes-no answers of the defendant. But in a situation where the guy has told them that he's under the influence of psychotropic drugs and the lawyer knows he has a history of being incompetent, I don't know if this trial judge knew that 10 months before, two doctors had found him incompetent, but it was the lawyer's obligation to bring forward that information to stop the plea and have a competence hearing and have an exam right then. So there was no mental exam of my client other than the visits that he was having at the jail where the jail psych personnel were treating him and were noting that his various times that he was having hallucinations and delusions and they were decreasing for a period of time and that the district judge or the magistrate in his findings and recommendations noted that three weeks prior to the change of plea, a doctor noted or whoever saw him noted that he was doing well and they were decreasing his drugs. How soon before this plea was taken was he found to be competent? It's approximately 10 months. I have the dates on my list here. He's catatonic in February of 1995 and in May of 1995 he's been under Thorazine and Prozac and he's recovered sufficiently to be found competent and then in September of 1995, so four months later, the jail people examine him and he is again hallucinating, delusional and, you know, has broken with reality. So he enters his plea four months later in January and eight days or nine days before his change of plea, there's a notation that he has been missing pill call and it's unclear for how long he's been missing his meds, but what the history shows is that when he doesn't take his medications, he becomes psychotic and the lawyer, had he dug further, his first lawyer would have known these things. The third lawyer, his heart was in the right place, but he unfortunately substituted himself for the expert testimony that would have been required, both on the effects of these drugs, the PDR indicates, as I put in my brief, that they have interactions with each other that cause problems and that if he suddenly stopped one of the drugs he was taking, that he would have withdrawal symptoms and immediately revert to his symptoms. Is the theory that he was not competent at the time of the plea to plead because he was under medication or because he wasn't under the medication he was supposed to be under? He was not under the medication that he was under at the time when he was found to be competent. The jail gave him different medication and they were withdrawing that medication shortly after he showed some turnaround, some progress, so what ended up happening is at the time he changed his plea, he was either receiving very little or no medication and so he was, therefore, incompetent and unable to understand, so unable to enter an intelligent plea. It's your position that he wasn't under the influence of any of these drugs. Well, I don't know if he had some of them and not others or how much. It says he's been missing pill call and I imagine that a further investigation and further evidence could have shown and possibly could still show how many days he was missing it because I imagine there are records in the jail as to when people are given their medications. But even in the change of plea, you can see that there are the wife, in contrast to his yes and no answers, interrupts many times and asks for clarification. She says she can't afford a fine, which presumably my client can't afford either, but he doesn't say anything. He's just saying yes, no, yes, no. And when the judge hears this four-page convoluted factual basis, which lumps both defendants together and tells the whole long story of the series of crimes, the judge never asks the defendant if he understands the factual basis or if he did that, which is normally part of the change of plea. So there's not even an indication that he comprehends what they're saying that he did. Now, in Miles v. Stainer, which is a case I submit in my Rule 28J letter, it had almost identical facts. There the defendant had fluctuating competence. He was on antipsychotic drugs, and there was evidence that he did not take his drugs, that he sometimes didn't take his drugs. And there's a note in my client's medical records that says that because of his inconsistency with drugs, they're going to wait and see or they're going to evaluate him further as to which drugs to give him. And there were five months or four months prior to his arrest when he was not on drugs and therefore was quite psychotic. So the facts in that case are almost identical to the facts here, and it was found there that the plea needed to be withdrawn and that it was an incompetent plea. Now, what factual hearings have been held? There was a factual hearing on the motion to withdraw the plea, right? That's correct. And the only things that were heard in that hearing were the submissions in writing, the declaration of the lawyer saying, I've read these medical records, but he doesn't produce them, and they seem to me to show that he's incompetent. So that's, you know, not sufficient evidence for the judge, but certainly put the judge on notice that he needed to hear more. And the testimony of the first lawyer who was called basically testified that he wouldn't have entered, taken his client's plea or allowed his client to proceed if he had thought that he was incompetent, but he gives all these indications that he really wasn't, that the client wasn't competent, because it took two and a half hours to meet with him in the morning just to get him ready. All right. That's the answer. Yes, it was that factual hearing. Then were there any factual hearings in any of the factual hearings? No. And in fact, this defendant was pro per. Hold on, hold on. In the state court? No. No. Was there a factual hearing in the district court? No. Okay. He was pro per there. I'm sure with helpers. We'll give you your two minutes for rebuttal. Thank you. Okay. Good morning, Your Honors. Deputy Attorney General Eric Christofferson on behalf of the Respondent or Appellee, excuse me. On the issue of the withdrawal of the plea, Respondent Smiths or Appellee Smiths, that that issue has been procedurally defaulted by Petitioner's failure to raise the claim in a petition for review on direct appeal. The claim was originally raised in the Court of Appeal on direct appeal, and then Petitioner raised or Appellant raised a subsequent petition for review in the California Supreme Court, but only raised the cruel and unusual punishment argument attacking his three strikes conviction or sentence. Now, there were two petitions for review in the Supreme Court denied with a just one-sentence denial. Yes, Your Honor. And one referred to In re Walfeus. Yes. And one didn't refer to anything. Are those – those are – they're dated the same. Yes, Your Honor. The appellant had filed two separate habeas petitions with the California Supreme Court. Yes. One asserted the plea withdrawal claim, and the second petition asserted ineffective assistance of counsel. The first claim, the plea – the argument claiming that the withdrawal of the plea was an abuse of discretion or denial of that was denied by the court with a cite to Waltris. That matches that claim. The second claim, or the second petition asserting ineffective assistance of counsel, is the claim that it was denied with the one-line just a straight summary denial on the same day. So why is it that you say that the Waltris one is the one in which he raised on habeas the question that they're raising here? He's – well, he's raised two separate claims here in addition to the three-strike claim. He raised a claim of abuse of discretion by the trial court in denying his motion to withdraw his plea. Yes. And that he raised in the habeas petition in the state. That was raised in – both on direct appeal and subsequently in the habeas petition. Okay. And the court – and the California Supreme Court denied that habeas petition with a cite to Waltris, referring the court – the petitioner back or appellant back to the fact that he had previously raised this claim on direct appeal. Okay. And it was therefore barred by – for the court. So what is it that you say he's waived? He's waived the withdraw of the plea claim. Under the principles of O'Sullivan v. Burkle, petitioner had – didn't raise this claim on direct appeal. I thought you just said that he – I'm sorry. He raised it in front of the court of appeal. He did not raise it in the petition for review in front of the California Supreme Court. And that is exactly the same circumstances that the court in O'Sullivan v. Burkle found to constitute a procedural default, because a petitioner are in – under California law is required to raise any claims for exhaustion purposes that were raised on direct appeal in the – in any – in a petition for review to the California Supreme Court. Did the State ever say in the State proceedings that there was a procedural default? The State never declared a procedural default specifically because of the – because of the unique circumstances of this case. Petitioner raised a – he filed in the court of appeal, filed a petition for review which only included one claim, did not include the claim involving the denial – involving the withdrawal of the plea. And by doing that, under California rules of court, Rule 28, he defaulted that claim by implication, by the fact that he didn't raise it. He – his direct appeal at that point was over, so there was no further opportunity for the California Supreme Court to assert Rule 28 as a procedural default. Well, on the habeas petition, it could have. Well, the court denied it for – on Waltrius grounds, because the claim at that point was not appropriate for habeas review, and it should have been raised under the – on direct appeal. And that's exactly the circumstances that the Supreme Court in O'Sullivan v. Burkle found to have resulted in a waiver of that particular claim, because by the petitioner or appellant failing to raise this claim in direct appeal, he did not give the State a full and fair opportunity to resolve this issue on direct appeal. He did not invoke a complete round of – of direct appeal. Now, he didn't raise it, not only with the Supreme Court on direct appeal, but in post-conviction or the State, he didn't raise it either, you're saying? No. He did raise it post-conviction. He – again, he attempted to raise it post-conviction. But because of the Waltrius rule in California, the California Supreme Court was unable to decide the claim based on the – on the rules that habeas does not lie as a second appeal. And that's exactly, again, the circumstances of what happened in O'Sullivan when the petitioner in that case filed a – didn't include all of his direct appeal claims on his discretionary petition for review in the Illinois Supreme Court and tried to raise those again in collateral review. The court refused to hear them under those circumstances, just like here, and then found that the – the United States Supreme Court found that those claims were not – The United States Supreme Court could have said, instead of saying, you've already raised it, so we're not going to consider it, they could have said, we're not going to consider it because you failed to raise it. The court could have said that, yes. And then you would have had a procedural bar determined by the State or asserted by the State. Asserted, yes. So they had the opportunity to assert it and didn't. Well, they asserted the same bar that was raised – that was asserted by the Illinois Supreme Court that says once a claim is filed in this – on direct appeal, we're not going to consider it on habeas. Okay. And that's exactly – That's fine, so they don't have to consider it on habeas. But that's a different reason than saying you failed to raise it in the Supreme Court before. They said the reason we're not going to consider it is because you did raise it. Because you raised it on direct appeal. Yes, that's right. But that's – all that tells you is why they're not going to consider it on habeas. That doesn't tell you why it's not fully presented. You say the reason it's not fully presented is because although it was raised on direct appeal, it wasn't raised to the Supreme Court. But the State – that's a separate independent ground for a State procedural default. But no State court ever said that. Well, as far as I – as far as I read O'Sullivan v. Burkle, the court – the Illinois court didn't say that either. They just said we can't consider this because it's already been raised on direct appeal. And the United States Supreme Court still found that it was a procedural default. O'Sullivan v. Burkle, if anything, establishes a separate Federal procedural default, which requires Petitioners in the first instance to raise their claims on direct appeal properly, to properly exhaust, and that's not what the Petitioner in this case did. And that is why under that case – under O'Sullivan, this – that claim should be defaulted. On the – on the issue of the – talking about the facts of the actual plea, if we're talking – if we're turning to the ineffective assistance of counsel claim or in the event that this Court doesn't find that this – that the withdrawal plea claim is denied, is procedurally defaulted, the State court at every level or at – certainly on direct appeal carefully considered the facts in this case. The trial court carefully took a very long and exhaustive plea, described the plea as very emotional. Petitioner's appellant's attorney also described the circumstances as emotional. This was a long, arduous plea. Understandably so. The appellant was pleading to a – a sentence or accepting a sentence of 25 years to life. It's understandable that it was a hard and difficult plea to make. But nonetheless, it was a plea that was intelligent, as Petitioner or appellant indicated just a few days or a couple weeks later talking to the probation officer when he indicated, I took 25 to life to avoid a 175-year-to-life sentence. That indicated that he knew exactly what he was doing. In the submissions on the plea – in the opposition to the motion to withdraw the plea, the DA presented evidence and a declaration indicating that the search warrant of Petitioner's house had indicated three strikes in – authorities regarding the three strikes law and several photocopies of California's competency law, 1368, indicating that this was a circumstance – I notice that I'm out of time. Well, keep going, sir. Okay. Indicating that – or at least indicating to the court that Petitioner was planning, that there was some evidence that establishing some attempt at creating a claim of incompetence in this situation. Thank you. If the court has no further questions. Thank you, counsel. Thank you. Just briefly on the claim of procedural default, the state has waived this claim. They didn't raise it in the district court, and they are then precluded from raising it here. But even if the court would consider that claim, Ehlist v. Nonemaker holds that Waltria sites in California decisions do not bar federal review. It's not a sufficient independent state ground for procedural bar. What holds there? Ehlist v. Nonemaker. Ehlist? Yeah, sorry. Okay. Yes. And as Judge Reinhart stated, there is no state decision denying the claim on the California rule of Court 28B, which would have been the rule that says you didn't raise it on direct appeal, and you were supposed to. So comedy does not require this court to do the California court job. Let me ask you a question. The O'Sullivan case the counsel relies on, they say you have to give one full round to the state court. Do you know whether in that case there was a full round if you combine the habeas and direct appeals? In this case, there was. I don't know about in O'Sullivan. You don't know about O'Sullivan. I'm sorry. Okay, that's all right. We can check. But certainly after that, this court decided Forrest, and Forrest is a case where there was a procedural default finding by the state court that said the person failed to do it. There was a dismissal order under Rule 28B, California Rules of Court. And that is the order that when the court looked through the California Supreme Court's habeas denial, you know, one-line habeas denial, it looked through that under Nunnemaker to find that there was, in fact, a procedural denial order, and that's the order that they applied. Whereas in this case, there's no such order. The practice of this court, if the California court wants to hear something on the merits, it has the right to do that, and it certainly knows how to dismiss things on procedural grounds. As to the facts that my opponent mentioned, the state court of appeals decision does not, of course, have the benefit of the evidence that was submitted in the habeas petition and could be submitted had there been competent representation and had this guy been appointed counsel in the habeas to have an evidentiary hearing and have him examined and have evidence that has still not been presented to this court. But even so, with the evidence that's presented in the habeas, the court can see that his delusions had returned very shortly after. He was telling one of the therapists that he believed he was going to get out on March 3rd, when clearly he was never going to get out. And he was extremely distraught when March 3rd came, and there's a notation there, and he was not released. The therapist didn't know what his situation was, so they assumed he really was getting out. He was so convincing. With regard to the three strikes material, that was many. That's not worth a no. Thank you. Thank you very much. Thank you, counsel, both of you. The case is argued very well by both sides will be submitted. Thank you.
judges: Reinhardt, Siler, Hawkins